UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EUGENE JONES,

        Plaintiff,

                                        CASE NO: 13-12837
                                        HONORABLE VICTORIA A. ROBERTS
v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.
_____/

**ORDER: (1) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT;
AND (2) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**I.    Introduction**

Eugene Jones ("Jones") challenges a final determination by the Commissioner of Social Security denying his application for Social Security Disability Insurance Benefits. The matter is before the Court on cross motions for summary judgment.

The Court **GRANTS** the Commissioner's Motion for Summary Judgment and **DENIES** Jones' Motion.

**II.    Background and Administrative Record**

    **A.    Background**

In the past, Jones worked as a warehouse worker; driver; cleaner; and, as an assembly worker. Jones was born on November 16, 1962 and has a high school education. He says he suffers hearing loss in his right ear secondary to vestibular schwannoma (brain tumor), degenerative cervical disc disease, and degenerative

1

changes to his (non-dominant) right shoulder.

Vestibular schwannoma is a benign, often slow growing tumor that develops from nerves supplying the inner ear. http://www.nidcd.nih.gov/health/hearing/pages/acoustic_neuroma.aspx (last visited March 9, 2015). As the tumor grows, it presses against the hearing and balance nerves, usually causing one-sided hearing loss, ringing in the ear, and dizziness and/or loss of balance. *Id.* If the tumor becomes large, it can be life-threatening. *Id.*

Jones filed for disability benefits on August 9, 2010; the claim was denied on January 27, 2011. Jones requested a hearing and appeared before Administrative Law Judge ("ALJ") Ethel Revels. Jones testified regarding his impairments. Vocational Expert ("VE") Frances N. Kinley testified by telephone. On January 25, 2012, ALJ Revels denied Jones benefits based on her determination that Jones retains the capacity to perform a reduced range of light work. The Appeals Council denied review.

    **B.**    **Administrative Record**

        **1.**    **Relevant Medical Records**

Dr. Rama Sree Kavuru (Dr. Kavuru) is Jones' primary care provider. (Tr. 218). Dr. Kavuru evaluated Jones on October 22, 2009. His treatment notes discuss blurred vision and decreased hearing in the right ear. (Tr. 264). Jones reported stiffness in knees when standing from a sitting position and pain in the knees while kneeling. (Tr. 264).

On February 4, 2010, x-rays taken of the left tibial and fibula revealed mild degenerative changes involving the ankle joint and a small bony spur from the anterior-

superior aspect of the patella. (Tr. 275). Jones was also evaluated for chronic lower back pain. (Tr. 275). An MRI showed mild degenerative changes with small bony spurs involving the lumber spine with slight narrowing of the disc space at L3-L4 and L2-L3 levels, along with a mild degree of calcification. (Tr. 275).

Jones saw his primary care physician (not referenced by name) on May 17, 2010 for lower back pain. (Tr. 242, 245). That doctor gave Jones tylenol and x-rays were reordered because of reported bilateral knee pain. (Tr. 245).

Lisa A. Walker, a doctor of audiology, examined Jones on August 3, 2010. (Tr. 217-221). Treatment notes discuss asymmetrical hearing loss. (Tr. 220). Walker noted Jones had no complaints of dizziness other than feeling lightheaded at times due to diet. (Tr. 217).

Ho-Sheng Lin, M.D., an otolaryngoloist and surgeon, evaluated Jones the same day and said the hearing loss will eventually require surgical treatment. (Tr. 220). Jones was prescribed a hearing aid. (Tr. 220).

Jones had an MRI done on September 22, 2010. (Tr. 307). The primary interpretive staff member is listed as Dr. Kanchi Sherpa, M.D., Radiology Staff Physician. (Tr. 308). The treatment notes say a lesion in his right internal auditory canal had not changed in size since November 9, 2009. (Tr. 307).

Dr. Walker saw Jones again on November 3, 2010. (Tr. 229). Treatment notes say that Jones reports occasional balance trouble including stumbling. Jones had an abnormal chair study, and Walker's notes say it suggests a peripheral disorder, but with no abnormalities in asymmetry, it appears to be a compensated lesion. (Tr. 230).

Cynthia Shelby-Lane, M.D., a consultative examiner, examined Jones on

December 8, 2010.  (Tr. 287).  Dr. Shelby-Lane noted that Jones has a history of brain tumor as well as chronic back and ankle pain for two years.  (Tr. 287).  Dr. Shelby-Lane's report says Jones does not use a cane or aid for walking; she observed that he is able to get on and off the table without difficulty. (Tr. 288).  She said his gait and stance are normal, that he is able to squat to sixty percent of distance, recover and bend to ninety percent of distance, and recover.  (Tr. 288).  The medical source statement says Jones needs ongoing care and follow up for his brain tumor and he may need further investigation for back problems.  (Tr. 289).  Dr. Shelby-Lane said Jones could hear normal conversation and whispers.  (Tr. 289).

On February 2, 2011, Jones had imaging done under the supervision of Dr. Pradip Shah, a radiology staff physician.  (Tr. 306-07).  It revealed mild degenerative changes to the glenohumeral joint and mild osteoarthritis in his right shoulder.  *Id.* Additionally, treatment notes reveal degenerative changes throughout the cervical spine with marginal osteophyte changes and narrowing of disc space at the C5-C6 level.  (Tr. 306).  Other treatment notes from that day discuss pain in the back and shoulder and say that medications are not helping.  (Tr. 359).  Treatment notes also mention interrupted sleep and numbness in the right arm.

Jones saw Belinda Ice ("Nurse Ice"), a family nurse practitioner, on April 18, 2011.  (Tr. 317).  Jones reported right shoulder pain radiating from his neck to his fingers.  (Tr. 317).   Treatment notes reference weakness, numbness and an inability to grasp objects at times.  *Id.*  The record is not specific about what felt weak or numb.  Jones reported his pain as constant 10/10.  *Id.*  Notes reference Vicodin and muscle relaxant.  *Id.*

On July 15, 2011, Nurse Ice gave Jones an injection in the right shoulder. (Tr. 335). Pain was lessened and then rated by Jones as 4/10. Jones reported the pain as tingling but said he was able to sleep at night. (Tr. 335).

### 2. Hearing Testimony

Jones' brain tumor is monitored every six months. (Tr. 39). He suffers hearing loss in his right ear. (Tr. 40). Other symptoms include occasional dizziness when walking short distances, sweating, ringing in the ears and back pain. (Tr. 40-42).

Jones says he is unable to work full time because his back gives out and he experiences neck pain. (Tr. 57). Jones says he is left handed and that arm is basically useless. (Tr. 57-58). He testified that he can use his left hand for "little stuff" but it is weak and he often holds it against his body. (Tr. 58). He says he believes he can lift twenty-five pounds with his right arm and less than ten pounds with his left. (Tr. 57-58).

Jones testified that his neck pain is constant and severe. (Tr. 59). Jones says the pain is not always triggered by movement, but movement often quickly results in pain. (Tr. 60). Jones takes muscle relaxers twice a day, a pain pill he did not know by name which he takes as needed, and Vicodin every six hours. (Tr. 61). He says Vicodin seems to help. (Tr. 61).

Jones says he experiences significant back pain. (Tr. 63). He says in order to touch the ground, he would have to kneel first; he cannot reach down from a standing position. (Tr. 63). He says the pain makes him feel paralyzed. (Tr. 63). Jones says unlike his neck, the back pain eventually goes away. (Tr. 64).

Jones says he has knee pain and at night he has to have a pillow between his legs. (Tr. 64). During the day, Jones says he has to stand and let the blood circulate

before walking. (Tr. 64). He says it is painful if his knees hit each other; but otherwise they are not painful. (Tr. 65).

Jones says he has a problem with his right shoulder which he says is related to his neck. (Tr. 65). He says he receives shots for it every three or four months. (Tr. 66). The shots relieve some of the pain but don't cure it. (Tr. 66).

Jones testified that he did some physical therapy but it was discontinued because it aggravated his neck. (Tr. 67). He says he uses a heat pad and his girlfriend helps him use a machine which administers a shock treatment to relax muscles. (Tr. 67).

Jones says he has trouble sleeping and takes short naps during the day. (Tr. 69). He tries to help around the house; he is learning to use his right hand to wash dishes. (Tr. 71). He says he cannot cut grass because of the vibration. (Tr. 71). He also does laundry but he doesn't carry the basket. (Tr. 72). Sometimes he has to take breaks from doing the laundry because his neck hurts, but he finishes it eventually. (Tr. 72).

Jones testified he is able to stand for approximately twenty minutes while doing something. (Tr. 72). Jones says he has some problems with memory and concentration. (Tr. 73).

### III. Social Security Act Benefits

#### A. Framework for Social Security Disability Determinations

Under 42 U.S.C. § 423, a wage earner suffering from a disability is entitled to disability benefits. The act defines disability as an "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine if a person is disabled and eligible for benefits, the Commissioner uses a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments, that significantly limits ... physical or mental ability to do basic work activities, benefits are denied without further analysis.
>
> Step Three: If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform in view of his or her age, education, and work experience, benefits are denied.

*Id. (citing* 20 CFR § 404.1520). For the first four steps, the claimant bears the burden to prove the severity of impairment and that it precludes performing work. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); *Spreeman v. Comm'r of Soc. Sec.*, No. 12-12641, 2013 WL 5212023, at *2 (E.D. Mich. Sept. 16, 2013). At the fifth step, the burden shifts to the Commissioner to show that other jobs exist in the national economy that the claimant is qualified to perform despite impairment. *Id.* To meet this burden, the Commissioner's decision must be supported by substantial

evidence. *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). Substantial evidence may be testimony of a vocational expert in response to a hypothetical question, but only if the question accurately portrays the claimant's individual physical and mental impairments. *Id.*

  **B. ALJ Findings**

The ALJ applied the five-step sequential analysis and concluded Jones is not disabled.

At step one, the ALJ determined Jones had not engaged in substantial gainful activity since the alleged onset date, October 1, 2009.

At step two, she found Jones has the following severe impairments: (1) loss of hearing in right ear secondary to right vestibular schwannoma; (2) degenerative cervical disc disease; and (3) degenerative changes to non-dominant right shoulder. The ALJ found these impairments caused more than minimal limitations in Jones' ability to engage in basic work-related activities.

In addition, the ALJ concluded the following impairments have not been an ongoing continuous problem for twelve months and therefore do not meet the criteria for severe impairments: (1) lumbosacral disorder; (2) left leg disorder; and (3) ankle disorder. The ALJ also noted Jones has been diagnosed with mild obstructive ventilatory defect, but the record does not indicate any continuing treatment; Jones continues to smoke a pack of cigarettes a day, something he has done for the last twenty years.

At step three, the ALJ determined Jones does not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed

impairments in 20 CFR Part 404, Subpart P, Appendix 1.  The ALJ considered the following medical listings: (1) 1.02 major dysfunction of a joint(s) due to any cause; (2) 2.07 disturbance of labrinthine-vestibular function; and (3) 2.10 hearing loss not treated with cochlear implantation.

Before considering step four, the ALJ determined Jones' residual functional capacity ("RFC").  The RFC is a claimant's ability to do physical and mental work activities on a sustained basis despite any limitations from impairments.  The ALJ determined Jones has the capacity to perform a reduced range of light work with some limitations.  Jones would be limited to a relatively quiet work area that does not involve loud noises.  The work must not involve vibratory tools or be in an area where there is vibration.  The work cannot be at hazardous heights; involve dangerous machinery, or require climbing ropes, ladders or scaffolds. The work cannot involve overhead reaching with the left arm.  The work must also be limited to simple repetitive tasks because Jones has moderate limitations in his ability to maintain concentration for extended periods due to pain.  Lastly, the work cannot require full auditory ability because of right-ear hearing loss.

The ALJ concluded Jones' statements concerning the intensity, persistence and limiting effects of his symptoms are not credible to the extent they are inconsistent with the RFC.  The ALJ found the combined effects of physical impairments are partially credible to the extent Jones is limited to a reduced range of light work with the above mentioned physical limitations.  The ALJ gave some weight to Dr. Shelby-Lane's consultative examination; she suggests Jones' impairments are not totally and permanently disabling.  The ALJ gave less weight to the assessments by the State

Agency consultants because they opined that Jones retains the capacity to do a range of medium work. The ALJ concluded that finding is not consistent with the record as a whole.

At step four, the ALJ found Jones unable to perform past relevant work.

At step five, the ALJ determined Jones has the residual functional capacity to perform a full range of light work and that such jobs exist in the national economy.

### C.     Standard of Review

A person may seek judicial review of any final decision of the Commissioner of Social Security; however, the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. 42 U.S.C. § 405. "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citation omitted). Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could also support the opposite conclusion. *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). If the Commissioner's decision is supported by substantial evidence, it must stand, regardless of whether the Court would resolve the disputed facts differently. *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993).

"In determining whether the Secretary's factual findings are supported by substantial evidence, a court must examine the evidence in the record taken as a whole, and take into account whatever in the record fairly detracts from its weight."

*Id.* (citations omitted). Thus, in reviewing the Commissioner's decision, the court may consider only the record that was before the ALJ, and cannot review the evidence *de novo*, weigh the evidence, or make credibility determinations. *See*, *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d at 681.

## IV. Discussion

### A. ALJ's Credibility Determination

Jones says the ALJ made an erroneous credibility determination and failed to adequately explain her findings. The Court disagrees; the ALJ considered proper factors and relied on objective medical evidence. Moreover, Jones' testimony about his pain conflicts with other evidence in the record.

When evaluating subjective complaints of pain, the court looks to whether there is objective medical evidence of an underlying medical condition. *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994) (citations omitted). If there is, the court evaluates whether: (1) objective medical evidence confirms the severity of the alleged pain arising from the condition; or, (2) whether the medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain. *Duncan v. Secretary of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). The Sixth Circuit acknowledges situations exist where symptoms such as pain suggest the possibility of greater restrictions: "[i]n such cases, reasonable conclusions as to any limitations on the individual's ability to do basic work activities can be derived from the consideration of other information in conjunction with medical evidence." *Jones v. Sec'y, Health & Human Servs.*, 945 F.2d 1365, 1370 (6th Cir. 1991).

11

The ALJ did partially discount Jones' testimony regarding his pain; however, the ALJ applied the correct analysis and provided an adequate explanation.  The ALJ first determined whether Jones had a medically determinable physical impairment.  The ALJ discussed several impairments which could reasonably be expected to produce pain or other symptoms.  These impairments include Jones' allegations of complete hearing loss in his right ear secondary to a brain tumor; allegations of occasional balance trouble, stumbling, and occasional vertigo; and finally, chronic pain in the neck and both shoulders.

The ALJ next considered the intensity, persistence and limiting effects of pain to determine the extent they limit functioning.  The ALJ considered Jones' symptoms of chronic pain and sleep disturbance and determined that they caused moderate limitations in his ability to maintain concentration for extended periods of time.  The ALJ accounted for an inability to maintain concentration by limiting Jones to unskilled work.

In making this determination, the ALJ found pain medication and physical therapy were effective in managing Jones' pain - specifically, that a steroid injection in the right shoulder reduced pain from 10 out of 10 down to 4 out of 10.  The ALJ also found Jones' chronic pain secondary to degenerative disc disease of his cervical spine could likely cause otherwise non-medically determinable pain in his left shoulder.  The ALJ accounted for this by limiting Jones to jobs where he would not be required to reach overhead with this left arm.

The ALJ also relied on the consultative examination and opinion by Dr. Shelby-Lane; she decided that Jones' physical impairments are not totally and permanently disabling.  Shelby-Lane opined that Jones could do a reduced range of light work on a

regular basis, which she defined as the equivalent of eight hours a day, five days a week.

The ALJ concluded that although Jones' physical impairments could be reasonably expected to cause some pain, his statements regarding the intensity, persistence, and limiting effects are not credible to the extent they are inconsistent with the RFC.

Jones says the ALJ failed to be sufficiently specific regarding the weight she gave his statements and the reasons for that weight. The Court disagrees. The ALJ did assign a weight to Jones' testimony; she found him "partially credible" and supported her conclusion with references to relevant portions of the medical record. The ALJ also discussed the weight she assigned to Dr. Shelby-Lane (some weight), and State Agency assessments at the initial determination level (less weight because they opined that Jones could perform a range of medium work which the ALJ determined is inconsistent with the record as a whole).

Jones says the medical record reveals much more severe limitations and references several sections of the medical record. These records either reference an underlying medical condition or they relate to allegations and/or treatment for pain. The ALJ took both into account. The ALJ properly evaluated Jones' complaints of pain and her credibility determination is sufficiently explained and supported by substantial evidence.

    **B.    Accuracy of Residual Functional Capacity Assessment and Hypothetical**

        **1.    RFC determination**

Jones says the ALJ made an erroneous determination at the fifth step of the sequential analysis. Jones says the RFC did not include Jones' chronic orthopedic pain and neurological and auditory impairments.

Once an ALJ determines a claimant does not have the residual functional capacity to perform past relevant work, the burden shifts to the Secretary to show the claimant can perform other substantial gainful activity existing in the national economy. *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (citation omitted). Meeting this burden requires a finding supported by substantial evidence that claimant has the vocational qualifications to perform specific jobs. *Id.* citing, *O'Banner v. Sec'y of Health, Ed. & Welfare*, 587 F.2d 321, 323 (6th Cir. 1978). "Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question, but only 'if the question accurately portrays [plaintiff's] individual physical and mental impairments.'" *Varley*, 820 F.2d at 779 quoting, *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir.1984).

The record establishes that the RFC is supported by substantial evidence. The ALJ discussed medical treatment notes, the consultative examination opinion, and Jones' own testimony. The ALJ also considered Jones' allegations of pain and limited Jones to simple, repetitive, unskilled tasks because of moderate limitations to maintain concentration. Although Jones cites to multiple locations in the medical record, none of them supports a finding that Jones is completely disabled because of impairments.

The ALJ also sufficiently considered Jones' neurological and auditory impairments: the brain tumor remained stable and although it caused hearing loss, there is substantial support that these impairments are not completely disabling. The only

medical source statement is by the consultative examiner Dr. Shelby-Lane. She said Jones can hear normal conversation and whispered voices. Nonetheless, the RFC took into account Jones' testimony and limited him to working in relatively quiet areas, not involving loud noises, vibratory tools, or vibration. The ALJ also limited Jones to work that does not require full auditory ability.

In light of the evidence in the record, the RFC assessment is supported by substantial evidence.

### 2. Accuracy of the Hypothetical

Jones says his physical impairments prevent him from performing even light work. He also says the ALJ failed to create an accurate hypothetical which encompasses his limitations.

The ALJ posed two hypothetical questions to the VE. Assuming the claimant's age, educational level, and work experience, the ALJ asked what types of jobs a person would be able to perform with the following limitations:

> Assume also that our hypothetical claimant needs a . . . work area that does not involve loud noises or he needs a . . . relatively quiet area. That work must not . . .involve his operating in a vibratory area, an area where [there is] other vibratory tools being used . . or where there would be vibration. . . [t]he work must not be at hazardous heights or around dangerous machinery, nor . . .involve climbing of ropes, ladders or scaffolds. [The] work must not involve any overhead reaching with the left dominant arm . . .[the] work must be simple, repetitive tasks, because there are moderate limitations in the ability to maintain concentration for extended periods due to pain.

The ALJ added loss of hearing on the right side as a limitation.

The VE testified that there would be some sedentary jobs available, such as a charge account clerk (35,000 jobs nationwide), ticket checker (50,000 jobs nationwide)

or surveillance monitor (25,000 jobs nationwide). (Tr. 87). At the light exertion level, the VE testified that there are positions available as an office helper (105,000 jobs nationwide), night patrol (200,000 nationwide), mail clerk (159,000 nationwide or 7000 in Michigan). (Tr. 87-88). The ALJ testified that these jobs could be performed with a sit/stand option. (Tr. 90).

The second hypothetical contained the same limitations as the first hypothetical plus the additional limitation of having no use of the left dominant arm. (Tr. 88). The VE testified that such person would not be able to perform any of the jobs identified in response to the first hypothetical.

Jones says he cannot perform light work and the hypothetical fails to take into account his back, neck and shoulder pain. Jones also says he occasionally feels lightheaded and sometimes has problems with balance and stumbling.

As described above, the ALJ included limitations that take into account the inability to concentrate because of pain. Additionally, evidence in the record supports the conclusion that pain medication is effective. The ALJ questioned the VE regarding whether the jobs identified could be performed with a sit/stand option; the VE opined that they could. There is evidence in the record that Jones experiences pain when switching from sitting to standing. However, Dr. Shelby-Lane also noted that Jones could get on and off the examining table without difficulty.

Jones also says light work requires lifting no more than 20 pounds at a time and frequent lifting or carrying objects weighing up to ten pounds. In his motion, Jones says he cannot meet these physical requirements. However, Jones testified at the hearing that he could lift up to twenty-five pounds with his right arm and possibly ten pounds

with his left. The ALJ did not specifically address Jones' testimony regarding how much he can lift, but this omission is inconsequential; the medical evidence supports a finding that Jones is capable of performing a reduced range of light work with the above physical limitations. Jones' testimony supports this conclusion as well.

The ALJ's analysis at step five is proper and supported by the record.

## VI. Conclusion

The Court **GRANTS** the Commissioner's Motion for Summary Judgment and **DENIES** Jones' Motion.

**IT IS ORDERED.**

                                               /s/ Victoria A. Roberts  
                                              Victoria A. Roberts  
                                              United States District Judge

Dated: March 23, 2015

> The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on March 23, 2015.
>
> s/Linda Vertriest  
> Deputy Clerk